NOT FOR PUBLICATION                                                                                          (Doc. Nos. 26, 31)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| HENRY TAYLOR and SUSAN TAYLOR, Individually and as assignees of Abrisco Enterprises, Inc. Gifford Construction, Brian L. Gifford, Co. and Brian Gifford assignees,<br><br>    Plaintiffs,<br><br>    v.<br><br>S.T. GOOD INSURANCE, INC., APPALACHIAN UNDERWRITERS, INC., DANIEL L. GOOD, JOHN DOES 1-10, and ABC CORPORATIONS 1 through 10,<br><br>    Defendants. | Civil No. 10-4258 (RBK/KMW)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This third-party action involves tort and contract claims by an employee, as purported assignee of his employer's rights, against his employer's insurance broker and insurance wholesaler. This matter comes before the Court on the motions for summary judgment by co-Defendant S.T. Good Insurance, Inc. ("Good"), and co-Defendant Appalachian Underwriters, Inc. ("Appalachian") seeking dismissal of the Complaint of Plaintiffs Henry and Susan Taylor. Central to the co-Defendants' motions for summary judgment is a claim that Plaintiffs should be collaterally estopped from re-arguing the issue of intentional wrongdoing by Plaintiffs' employer. Because the Court agrees with both co-Defendants that this issue has already been conclusively

1

litigated by another court of competent jurisdiction, and that this issue is dispositive of Plaintiffs' claims, the Court grants both co-Defendants' summary judgment motions.

## I. BACKGROUND

Plaintiff Henry Taylor ("Taylor") was previously employed by Brian Gifford and Arbrisco Enterprises, Inc., as a truck driver. Pl. Counter-Statement of Undisputed Material Facts (CS) ¶ 1. On June 17, 2004, Taylor was severely injured while driving a dump truck for his employer, due to a defect in the vehicle's brakes. Id. ¶ 2. Plaintiffs subsequently brought a lawsuit against Gifford and Arbrisco, as well as an outside truck repair company, Bergey's trucks, Inc. ("Bergey"). Id. ¶ 3. Taylor's claims against his employers were brought pursuant to the exception to the exclusivity provision of the New Jersey Worker's Compensation Statute (WCS) that allows for lawsuits arising from an intentional wrong. Id. ¶ 4; see Laidlow v. Hariton Machine, Co., 790 A.2d 884 (N.J. 2002) (establishing the elements required to satisfy the intentional wrong exception to the worker's compensation bar).

On the third day of the trial, Plaintiffs settled all of their claims against Gifford and Arbrisco. Pl. CS ¶ 9. Because co-defendant Bergey had brought a cross-claim against Gifford and Arbrisco in the prior litigation, the court went on to consider the issue of whether Arbrisco and Gifford were liable for intentional wrongdoing. Upon hearing oral argument and evidence presented by Plaintiffs and co-Defendant Bergey, the court found that Gifford and Arbrisco were not liable for committing an intentional wrong. Id. ¶ 10.

After the previous litigation ended, Plaintiffs allegedly executed an assignment of rights agreement with Gifford and Arbrisco. Id. ¶ 25. Plaintiffs bring the instant action as assignees and individually against Good and Appalachian. Good and Appalachian both move for summary judgment. For the reasons herein, the Court grants summary judgment as to both co-Defendants.

**II. LEGAL STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony.  Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995).  The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact.  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment."  Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

**III. DISCUSSION**

Good and Appalachian argue alternatively that 1) Plaintiffs claims are barred by collateral estoppel; 2) Plaintiffs never validly executed an assignment of rights; 3) Plaintiffs have failed to raise a genuine issue of material fact regarding any negligence by Good and Appalachian; 4) Plaintiffs' tort claims are barred as a matter of public policy in New Jersey; 5) Plaintiffs' claims are barred by the statute of limitations; and 6) Plaintiffs' expert's report regarding Defendants' alleged negligence is inadmissible.  Because the Court agrees with Defendants that collateral estoppel should be applied as to the issue of intentional wrongdoing by Taylor's employer, and because the Court finds that the issue of intentional wrongdoing is dispositive of Plaintiffs' claims, the Court needs not address Defendants' other arguments.

Plaintiffs bring actions in negligence, breach of contract, and breach of fiduciary duty against Defendants.  Plaintiffs argue that Defendants breached their professional duty to recommend an appropriate amount of liability coverage for Taylor's employer to purchase, and that as a result Taylor's employer, though meeting the statutory minimums for insurance coverage, was "not fully insured and/or woefully underinsured in the Underlying Action." Compl. ¶ 32.  Therefore, Plaintiffs claim, Defendants are liable for damages resulting from Taylor's employer's inadequate insurance coverage.   Defendants counter that Plaintiffs should be collaterally estopped from re-litigating the issue of intentional wrongdoing on the part of Taylor's employer, and that therefore Plaintiffs' claims are properly barred by the Workers' Compensation Act (WCA).  Because of the WCA bar, Defendants assert, Plaintiffs are unable to prove that Defendants were either a but-for or a proximate cause of Plaintiffs' injuries, even if Plaintiffs were to establish that Defendants were negligent and breached contractual and/or fiduciary duties.

Plaintiffs previously submitted a claim for Workers' Compensation.  Cohen Cert., Ex. A, Workers' Compensation Petition of Plaintiff Henry Taylor.  "The Workers' Compensation System has been described as an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for a prompt and automatic entitlement to benefits for work-related injuries."  Laidlow, 790 A.2d at 886 (2002).  However, "an employer who causes the death or injury of an employee by committing an 'intentional wrong' will not be insulated from common-law suit."  Id.  The WCA provides in relevant part:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

N.J. Stat. Ann. § 34:15-8.

Due to the prior litigation, Good and Appalachian assert that Plaintiffs are collaterally estopped from arguing that Gifford and Arbrisco committed an intentional wrong.  If this is correct, Plaintiffs will be unable to prove that Defendants caused Plaintiffs any harm because Plaintiffs' common law claims against the employer will be barred by the WCA provision cited above.  Moreover, since Plaintiffs' claims against the employer are barred, then, as a matter of law, neither the employer nor the employer's insurance carrier can be liable for any damages to Plaintiffs.  Thus, Plaintiffs will be unable to claim any damages from Taylor's employer's insurer, even assuming that the employer validly assigned its rights to Plaintiffs.

Defendants argue that the Court should apply the finding of the Superior Court of New Jersey that Plaintiffs and Bergey had failed to provide any evidence of intentional wrongdoing by Gifford and Arbrisco.  Appalachian Def. Ex. H, Colloquy Transcript, Hay Cert., 6:22-8:23.  Because Defendants seek to apply collateral estoppel with respect to a New Jersey State Court decision, this Court applies New Jersey's laws on issue preclusion.  Anela v. City of Wildwood,

790 F.2d 1063, 1068 (3d Cir. 1987) ("The federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the . . . proceeding took place . . . ."); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  Under New Jersey law, the party asserting collateral estoppel to foreclose the re-litigation of an issue must establish the existence of five conditions:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding;
> (2) the issue was actually litigated in the prior proceeding;
> (3) the court in the prior proceeding issued a final judgment on the merits;
> (4) the determination of the issue was essential to the prior judgment; and
> (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Olivieri v. Y.M.F. Carpet, Inc., 897 A.2d 1003, 1009 (N.J. 2006).  Moreover, collateral estoppel "has its roots in equity" and as such will be applied with a view towards obtaining a fair result for all parties.  See 789 A.2d 162, 171 (N.J. Super. App. Div. 2002).

Plaintiffs argue that Defendants cannot establish the second and third collateral estoppel factors.  Plaintiffs further contend that the Court should not collaterally estop Plaintiffs from arguing the issue of intentional wrongdoing because it would be unfair to do so.  The Court addresses these contentions in turn.

**A. Prior Litigation of the Issue of Intentional Wrongdoing**

Regarding the second factor, Plaintiffs assert that because they entered into a settlement agreement with Arbrisco and Gifford prior to the Court's ruling, the issue of intentional wrongdoing was not actually litigated.  "An issue is 'actually litigated' when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined."  O'Leary v. Liberty Mutual Co., 923 F.2d 1062, 1066 (3d Cir. 1991) (citing Restatement (Second) of Judgments § 27 comment d, at 255) (1982)).  Here, Plaintiffs concede that they raised the identical issue of intentional wrongdoing against Gifford and Arbrisco in the prior litigation.

6

However, Plaintiffs claim that due to the settlement agreement, the issue was never submitted for determination. This argument fails because the Court did in fact consider the issue of intentional wrongdoing both in the context of Plaintiffs' claims as well as Bergey's cross-claims against Gifford and Arbrisco. Specifically, the Court found that

> The testimony here was that the plaintiff alleged the employer gave him a truck that he knew had faulty brakes. The defendant Gifford had testified that he did nothing intentionally ever to hurt the plaintiff or destroy his truck. The plaintiff agreed with that in his testimony. . . . On the testimony that's before the Court it seems to me that the Laidlaw [sic] test has not been satisfied.

Appalachian Def. Ex. H, Colloquy Transcript, Hay Cert., 6:22-8:23.

Plaintiffs remained a party to the lawsuit throughout the course of the prior litigation and had a full and fair opportunity to litigate the issue of intentional wrongdoing. Importantly, Plaintiffs' counsel in the prior litigation admitted that "it does not appear that sufficient facts have been elicited as this trial has suppressed [sic] to support a Laidlaw [sic] [intentional wrongdoing] claim." Trial Transcript of 6/23/09, attached to Hay Cert. as Ex. H, 9:4-9:6 (Plaintiffs' counsel admitting that "[o]n the testimony that's before the Court, . . . there is no evidence of intentional wrongdoing").

Plaintiffs next argue that the dismissal of Bergey's cross-claims in the prior litigation does not preclude Plaintiffs from re-litigating Plaintiffs' own intentional wrong claim. This argument confuses the doctrines of claim preclusion and issue preclusion. Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not re-litigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748 (2001); see Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action"). Issue preclusion, in

contrast, bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." New Hampshire v. Maine, 532 U.S. at 748-749; see Taylor v. Sturgell 553 U.S. 880, 891 (2008). Defendants here assert that Plaintiffs' claims are barred by issue preclusion, not claim preclusion. Therefore, Plaintiffs' arguments are inapposite.

### B. Final Judgment on the Merits

Regarding the third collateral estoppel factor, Plaintiffs posit that because the issue of intentional wrongdoing was not actually litigated in the prior litigation, there could have been no final judgment on the merits. However, as noted above, the Court finds that the issue of intentional wrongdoing was actually litigated previously before the Superior Court of New Jersey. Furthermore, the Superior Court of New Jersey had issued a final judgment that Gifford and Arbrisco were not liable for any intentional wrongdoing. Accordingly, Plaintiffs' argument fails.

### C. Fairness

In light of the above analysis, the Court finds that all five collateral estoppel factors have been established between the prior litigation in state court and the instant litigation. Notwithstanding this conclusion, Plaintiffs finally argue that collateral estoppel should not apply because it would be fundamentally unfair. Pl. br. 15. Plaintiffs contend that after the settlement agreement had been entered into, they had little incentive to litigate the issue of intentional wrongdoing. Id. (citing Habick v. Liberty Mut. Fire Ins. Co., 727 A.2d 51, 57-58 (N.J. Super. App. Div. 1999)). In Habick, the court considered whether it would be fair to apply collateral estoppel to prevent re-litigation of an arbitrator's determination that medical treatment was not required as a result of accident-related injuries. Habick, 727 A.2d at 51. The plaintiff in Habick

argued that she had little incentive to litigate that issue in the prior arbitration, because she was seeking a speedy resolution to her claims. Id. at 57-58. In rejecting the plaintiff's argument, the Habick Court reviewed the five exceptions set forth in the Restatement (Second) of Judgments:

> (1) The party against whom the preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
>
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
>
> (4) The party against whom preclusion is sought has a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at that time of the initial action that the issues would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Habick, 727 A.2d at 60 (quoting Restatement (Second) of Judgments, § 28 (1982)). The Habick Court ultimately found that the plaintiff had a full and fair opportunity to present all of the evidence respecting the issues in the prior arbitration, notwithstanding the plaintiff's choice to forego presentation of evidence for tactical reasons. Habick, 727 A.2d at 57-58. Accordingly, the Habick Court held that there was nothing inherently unfair about applying collateral estoppel to preclude the plaintiff from re-litigating the already-decided issues. Id. at 58.

In the instant case, Plaintiffs contend, similarly to Habick, that Plaintiffs declined to litigate the issue of intentional wrongdoing for reasons of expediency. Pl. br. at 16 ("[I]t was

9

advantageous to [P]laintiffs to have Bergey's cross-claims dismissed because it resulted in the removal of Arbrisco's name from the Verdict Sheet."). Plaintiffs further explain that "a tactical decision was made not to present any additional evidence and not to contest Arbrisco/Gifford's motion to dismiss." Id. Plaintiffs do not specify which, if any, of the five Restatement exceptions should apply to prevent the application of collateral estoppel in the instant litigation. Plaintiffs also fail to identify any information related to the issue of intentional wrongdoing that they were either unable to present, or voluntarily withheld from presenting, at the prior trial.

Contrary to Plaintiffs' claims, the Court finds that Plaintiffs had a full and fair opportunity to litigate the issue of intentional wrongdoing in the prior trial, which lasted for four full days. During their case-in-chief, Plaintiffs called all of the witnesses that they had identified as persons having knowledge of any facts relating to the matter of intentional wrongdoing, seven witnesses in total. Every lawsuit involves tactical decisions by parties and counsel to advance their claims. However, the doctrine of collateral estoppel puts parties on notice that once raised and litigated in a court of proper jurisdiction, issues may not be relitigated at a party's convenience.[1] Because Plaintiffs had a full and fair opportunity to argue the issue of intentional wrongdoing in the prior litigation, the Court holds that the application of collateral estoppel to bar Plaintiffs' claims is proper in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the motions for summary judgment by Good and Appalachian. An appropriate order shall enter.

---

[1] Even where no party to a case raises the issue of collateral estoppel, a district court may sua sponte dismiss a claim on collateral estoppel grounds where "a court is on notice that it has previously decided the issue presented . . . . This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." Arizona v. California, 530 U.S. 392, 412 (2000) (citation and internal quotation marks omitted).

Dated: 1/11/12 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge